UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>　　Movant,<br><br>　　v.<br><br>STEVE H. KARROUM, *et al.*,<br><br>　　Respondent. | Misc. Action No. 15-590 (JEB/DAR) |

**MEMORANDUM OPINION AND ORDER**

When Respondent Steve H. Karroum resisted an administrative subpoena issued by the Securities and Exchange Commission, which is investigating him and his company for potential securities violations, the SEC brought this miscellaneous action for enforcement. After the parties were unable to resolve whether certain emails should be produced, Magistrate Judge Deborah Robinson, to whom the case had been referred, approved the SEC's proposed protocol. Karroum objects and asks this Court to reverse that holding. Believing it correct, the Court will overrule his objections.

**I.    Background**

In November 2014, the SEC issued a formal order authorizing Commission staff to investigate and take testimony related to the activities of FX & Beyond Corporation. See SEC Response (ECF No. 26) at 2. The SEC sought to determine "whether persons or entities have violated or are violating the registration, antifraud, and broker-dealer registration provisions of the federal securities laws . . . ." Id. Included in the SEC's gaze was Karroum, the company's president, whose activities the SEC is examining to uncover whether he may have engaged in a

1

Ponzi-type or other scheme to defraud investors or misappropriate their funds. See id. To this end, SEC staff served Karroum with a properly issued subpoena on January 14, 2015. See Application for Order to Show Cause and for Order Requiring Compliance with Subpoenas (ECF No. 1) at 1-2. The subpoena required Karroum to produce, within several weeks' time, "documents, computers or other materials related to his investment, business, and financial activities" and to testify before SEC investigators. See id. at 2-3.

After effecting service, SEC staff made repeated efforts to contact Karroum regarding compliance with the terms of the subpoena, but he at first did not return their calls, and then later, through his attorney, repeatedly sought to push back the testimony date, all while failing to provide the required documents. See Response at 3. Karroum eventually turned over some documents, but did not relinquish any email communications with investors — as required by the subpoena — and he parried attempts by the SEC to set a date for testimony. See id. at 3-4.

By May of this year, while Karroum's attorney said he had "no further responsive documents," the SEC maintained that Karroum still had not complied with the subpoena regarding the production of his emails. See id. at 4. Following the old proverb, "If at first you don't succeed, try, try, try again," the SEC did try, try again to get Karroum to comply, this time by filing this miscellaneous action for an Application for Order. See Response at 4. Eventually, "Karroum's counsel acknowledged that he had emails responsive to the SEC's subpoena that Karroum had not yet produced," id. at 5, but after producing approximately 1,200 emails, the SEC contended that "Karroum's email production had multiple, obvious deficiencies." Id. After several status conferences before Magistrate Judge Robinson, Karroum produced an additional 384 emails, but the SEC nonetheless requested relief from the Court when it determined that the supplemental production "cast doubt on the adequacy of Karroum's search." Id. at 7.

The Magistrate Judge then ordered the parties to propose a production protocol, and when they were unable to reach agreement, she held a hearing on how to ensure proper production of all relevant emails. See id. at 8. Karroum's requests included that the SEC pay for a third-party vendor to conduct the email search, that the Commission remove certain proposed search terms, and that Karroum retain the right to withhold certain emails, which he could submit to the Magistrate Judge for *in camera* review before producing them. See id. Magistrate Judge Robinson rejected these requests, instead issuing an Order adopting the SEC's proposed protocol, which specified that Karroum must consent to having his Internet Service Provider (ISP) turn over his emails to the SEC. See id. at 9. Karroum now objects to that Order, which he has asked this Court to vacate. See Objections to Magistrate Judge's Order (ECF No. 25) at 7.

## II.     Analysis

Karroum's objections rest on four independent grounds: A) the emails held by his ISP are protected by his Fourth Amendment right of privacy from unreasonable searches and seizures; B) the ordered protocol will reveal some emails that are protected by the marital-communications privilege; C) the order unlawfully commands the ISP to produce the emails without having received a properly served subpoena; and D) the order does not allow Karroum a meaningful opportunity to assert additional privileges after review, particularly his Fifth Amendment privilege. See Obj., ¶ 8. The Court separately addresses each objection, ultimately concluding that none holds water.

Before turning to these objections, the Court briefly notes that the SEC in its Response argues that Karroum has waived all four of them by failing to present any of them adequately before the Magistrate Judge. See Response at 12. Because the Court finds the objections fall short on their merits, it need not resolve this waiver question.

A.  Fourth Amendment Rights

Karroum first contends that the Fourth Amendment's prohibition on unreasonable searches and seizures protects "information entrusted to communications intermediaries but intended to remain private and free from inspection," which he argues covers his email communications stored by his ISP. See Obj., ¶ 12 (citation and internal quotations omitted). The SEC's request, however, does not turn on whether Karroum waived his right to privacy in storing his emails with the ISP. The Commission's subpoena, on the contrary, has from the beginning required that Karroum himself turn over the emails in question, and the D.C. Circuit has long held that administrative subpoenas targeting the respondent's own documents constitute reasonable searches. See Sec. & Exch. Comm'n v. Arthur Young & Co., 584 F.2d 1018, 1023-24 (D.C. Cir. 1978). In this Circuit, searches stemming from investigations "into possible infringements of the securities laws or implementing regulations" are not "unreasonable" since "[t]he Commission's subpoena power is coextensive with its investigative power; by statute it may require the production of any (document) which the Commission deems relevant or material to the inquiry [as long as] the Commission's interest in the documents demanded . . . [is not] untoward." Id at 1024-25. Of course, such subpoenas must be "sufficiently limited in scope" to satisfy the Fourth Amendment's reasonability requirement. See See v. City of Seattle, 387 U.S. 541, 544 (1967).

Here, the SEC seeks Karroum's email communications pursuant to a valid subpoena issued under 15 U.S.C. §§ 78u and 77t in conjunction with the ongoing investigation of FX & Beyond Corporation. See Memorandum of Points and Authorities in Support of Application (ECF No. 1) at 7. Its investigation follows evidence suggesting that the company and Karroum "have received at least $3.9 million from investors, purportedly to invest in foreign exchange

4

transactions, and have offered investors guaranteed returns of up to 30%." Id. at 2. Further evidence suggests that they have used some of these funds to make Ponzi payments to other investors. See id. at 2-3. All the while, neither FX & Beyond nor Karroum has registered with the SEC as a broker nor filed any registration statement concerning the investment offering. See id. In this context, it is entirely appropriate for the SEC to seek Karroum's communications with investors, including via email, and "the Commission has made sufficient showing of the relevancy of these materials to justify the Court's enforcement of the subpoena." Arthur Young & Co., 584 F.2d at 1028. Because the SEC's scope is properly limited, the Court finds no Fourth Amendment violation resulting from the Magistrate Judge's Order.

    B. Marital Privilege

Karroum's second argument to evade the subpoena is that certain searches in the ordered protocol include keywords that are likely to yield emails protected under the marital-communications privilege. See Obj., ¶ 15 (citing United States v. Hamilton, 701 F.3d 404 (4th Cir. 2012)). The SEC's search protocol indeed includes keywords such as "Albouhairy" and "Bouhairi," which Karroum alleges are related to his wife, Sahar Albouhairy. See id. Unfortunately for Karroum, while Hamilton acknowledged the existence of the marital privilege, that case actually held that emails sent "through [the defendant's] work email account" would not be covered under the privilege. See 701 F.3d at 407. Furthermore, Hamilton — the only case Karroum cites for this proposition — makes clear only that the marital privilege "'hold[s] their confidences immune from proof in court,'" not that the privilege entirely thwarts an administrative or law-enforcement investigation. See id. (quoting Wolfie v. United States, 291 U.S. 7, 16 (1934)) (emphasis added).

5

In any event, resolving the contours of the marital privilege is unnecessary here because the SEC's protocol includes a "privilege review team" of attorneys unrelated to the investigation who will ensure that "communications between Karroum and his wife . . . will be removed from the production . . . ." Response at 15. The SEC avers that it must search for emails containing the words "Bouhairi" and/or "Albouhairy" because its investigation has found that Karroum is associated with a Lebanese company, 3S S.A.R.L., which has associates named "Bouhairi" and which is located in a building called the "Al-Bouhairy" building. Id. at 15. Given the Commission's reasonable interest in emails incorporating these terms and the protocol's plan to screen any email communications between Karroum and his wife, the Magistrate Judge's Order does not encroach on Karroum's marital privilege, however far such privilege may extend at this non-testimonial stage in the proceedings.

C.  Authority re: ISP

Respondent next maintains that the Magistrate Judge lacks the authority to order the ISP to produce his emails. See Obj., ¶¶ 17-18. This, Karroum contends, is because the SEC has not yet served a third-party subpoena on Register.com, the ISP that acts as a conduit for his emails. See id., ¶ 19. The SEC counters that it has already communicated with the ISP, which has stated that it will produce his emails if it receives his signed and notarized consent form. See Response at 16; Decl. of Stephen T. Kaiser, ¶ 9. Although the Court questions whether Karroum even has standing to raise a challenge on behalf of his ISP, the Magistrate Judge's Order instructed that he was first to "deliver to [the SEC] a signed and notarized consent form . . . for the release of his emails from his internet service provider to [the SEC]." Order at 1. As such, her Order to the ISP was conditioned on receipt of that consent form, see id., and so the Court certainly has the authority to order Karroum to sign such a form.

6

D.  Preservation of Privileges

Karroum's last-ditch position is that the Order insufficiently protects his ability to raise other privileges, in part because the parties have not yet agreed on a "set of privilege terms" — and Karroum is doubtful that they will. See Obj., ¶¶ 22-26. The SEC explains that it will safeguard his attorney-client and marital privileges by including any emails between Karroum and one of his attorneys or his spouse in the list of emails to be screened by a team of attorneys not associated with the investigation. See Response at 16; Order at 2. The Court finds this proposed course of action wholly appropriate in balancing Karroum's right to assert these privileges against the SEC's statutory subpoena authority and interest in conducting its investigation.

The only other possible privilege Karroum specifically raises is a "Fifth Amendment right[] against self-incrimination." Obj., ¶ 26. Yet as the SEC rightly retorts, all of his emails are "'pre-existing, voluntarily prepared documents,'" which are not covered by the Fifth Amendment. See Response at 17 (quoting United States v. Hubbell, 167 F.3d 552, 567-69 (D.C. Cir. 1999), aff'd, 530 U.S. 27 (2000)). "The Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1976). The Court in Fisher noted that a subpoena requiring production of documents "does not compel oral testimony," nor would it "compel the [recipient] to restate, repeat, or affirm the truth of the contents of the documents sought." Id. at 409. While the Court noted that the act of production can have "communicative aspects of its own," when the individual has acknowledged the existence of the documents already — and knowledge of

7

those documents exists independent of him — his production of such documents is not testimonial in nature. See id. at 410.

Finally, Karroum raises an additional possible violation of the Fifth Amendment by speculating that the SEC might transmit evidence acquired under the Magistrate Judge's Order to the Federal Bureau of Investigation, thus allowing the Department of Justice to bypass a federal grand jury. See Obj., ¶ 27. Problematically for Karroum, the sole case he cites for the proposition that such activity is unlawful, United States v. Stringer, 408 F. Supp. 2d 1083 (D. Or. 2006), was overturned on appeal. See United States v. Stringer, 535 F.3d 929 (9th Cir. 2008). Karroum's position is further weakened by the fact that the Stringer appellate court held that when the SEC begins its civil investigation first, before a possible subsequent criminal prosecution, this "tends to negate any likelihood that the government began the civil investigation in bad faith, as, for example, in order to obtain evidence for a criminal prosecution." Id. at 939. Further, that court was looking at the propriety of dismissing criminal indictments, not the enforcement of an administrative subpoena in a civil proceeding. Should Karroum later find himself the target of federal criminal prosecution, he is of course free to raise these arguments again in those proceedings.

In summary, the Court finds that Karroum's attorney-client and marital privileges will be properly protected by means of the privilege-review procedure, and that the production protocol ordered by the Magistrate Judge does not infringe on his Fifth Amendment rights.

### III.  Conclusion

The SEC has repeatedly sought Karroum's compliance with its subpoena, and as this Court has now rejected his objections to its enforcement, the SEC will at last have its way. The

Court, accordingly, ORDERS that Respondent's objections to Magistrate Judge Robinson's [23] Order are OVERRULED.

          /s/ James E. Boasberg
          JAMES E. BOASBERG
          United States District Judge

Date:  December 9, 2015